**FILED**

**OCT 2 6 2018**

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| v. | : Criminal No. 18-CR-68 (BAH) |
| **MICHAEL AFRAM ORJI,** | : |
| Defendant. | : |

## REDACTED STATEMENT OF THE OFFENSE AND RELATED CONDUCT

### I. THE ELEMENTS OF THE OFFENSE

**Conspiracy To Commit Bank Fraud:** The essential elements of the offense of Conspiracy To Commit Bank Fraud, in violation of Title 18, United States Code, Section 1349, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) that two or more people agreed to try to accomplish a common and unlawful plan to violate Title 18, United States Code, Section 1344; and

(2) that the defendant intentionally joined in that agreement.

The elements of bank fraud in violation of Title 18, United States Code, Section 1344(2) are:

(1) that the defendant knowingly executed a scheme or artifice;

(2) that the scheme or artifice was executed to obtain monies or other property from a financial institution;

(3) that the scheme or artifice was executed by means of false or fraudulent pretenses; and

(4) that the false or fraudulent pretenses were material.

**Conspiracy To Launder Monetary Instruments:** The essential elements of the offense of Conspiracy To Launder Monetary Instruments, in violation of Title 18, United States Code,

Section 1956(h), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

    (1) that two or more people agreed to try to accomplish a common and unlawful plan to violate Title 18, United States Code, Sections 1956 or 1957; and

    (2) that the defendant intentionally joined in that agreement.

The elements of concealment money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), are:

    (1) that the defendant knowingly conducted or tried to conduct a financial transaction;

    (2) that the defendant knew the property involved in the transaction was the proceeds of some kind of unlawful activity;

    (3) that the money or property did come from a specified unlawful activity, including bank fraud; and

    (4) that the defendant knew the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or the control of the proceeds.

The elements of Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1957, are:

    (1) that the defendant knowingly engaged or attempted to engage in a monetary transaction;

    (2) that the defendant knew the transaction involved property or funds that were the proceeds of some criminal activity;

    (3) that the property had a value of more than $10,000; and

    (4) that the property was in fact the proceeds of a specified unlawful activity, including bank fraud.

## II. FACTUAL BASIS

Had this case proceeded to trial, the government would have proven the following facts beyond a reasonable doubt:

1. From at least on or before August 2015, continuing through at least on or about November 2017, within the District of Columbia and elsewhere, Michael Afram Orji (the "DEFENDANT"), together with co-conspirators known and unknown to the grand jury, did knowingly conspire, combine, confederate, and agree with each other to engage in bank fraud and to launder the resulting criminal proceeds. As described in further detail below, the bank fraud conspiracy involved a variety of means, including stolen checks and Business E-mail Compromise ("BEC") schemes.

2. In a typical stolen check scheme, the DEFENDANT and/or co-conspirators would obtain stolen checks intended for third parties, establish sham corporations and bank accounts in the names of the third parties for whom the checks were intended, and deposit or attempt to deposit the stolen checks into the sham bank accounts under the control of the DEFENDANT or co-conspirators. The DEFENDANT and co-conspirators then knowingly conduct or attempt to conduct a variety of transactions to drain the proceeds from the sham bank accounts, including cash withdrawals, checks, and wire transfers, for the purpose of concealing or disguising the nature, location, source, ownership, or control of the criminal proceeds.

3. In a typical BEC scheme, a co-conspirator would trick a company or individual into transferring large sums of money into bank accounts controlled by the DEFENDANT or other members of the conspiracy for a fictitious transaction. Using "spoofed" (fake) e-mails—which are fraudulent e-mail messages, often containing a forged sender address created to mislead the recipient about the true origin of the e-mail—the co-conspirators impersonate someone connected

to the victim and deceive the victim into making a fraudulent wire transfer from the victim's bank account to bank accounts controlled by the conspiracy. As with the stolen check schemes, the DEFENDANT and co-conspirators then knowingly conduct or attempt to conduct a variety of transactions to drain the proceeds from the bank accounts, for the purpose of concealing or disguising the nature, location, source, ownership, or control of the criminal proceeds

4. The DEFENDANT used numerous false aliases and forged driver's licenses in furtherance of the conspiracy, including aliases in the names of Walter Douglas, Glenn Briggs, Marc Bennett, Tony Johnson, Brian Hinsley, John Dwayne Lawler, and Christopher Lowell. The DEFENDANT used these false aliases and forged driver's licenses to establish bank accounts that were used to facilitate bank fraud and launder criminal fraud proceeds.

**VICTIM 1**

5. VICTIM 1 is a company based in Baltimore, Maryland.

6. On or about December 9, 2015, VICTIM 1 issued a check in the amount of $291,086.66 made payable to the TENNESSEE COMPANY, a company located in Tennessee with which VICTIM 1 had worked for over three years. On or about January 7, 2016, the TENNESSEE COMPANY contacted VICTIM 1 to notify VICTIM 1 that it never received the check.

7. On or about December 17, 2015, a new business entity was registered in Maryland under a name similar to that of the TENNESSEE COMPANY.

8. On or about December 21, 2015, the DEFENDANT entered a PNC Bank branch in Laurel, Maryland and provided a false Ohio driver's license in the name of Walter Douglas to open two business bank accounts in the name of the above-referenced Maryland corporation with a

name similar to that of the TENNESSEE COMPANY. The PNC Bank accounts had account numbers ending in 2318 ("PNC Bank Account 2318") and 2326.

9. On or about December 23, 2015, the DEFENDANT caused a third party to deposit the $291,086.66 check from VICTIM 1 into PNC Bank Account 2318 at a PNC Bank branch in the District of Columbia.

10. Following the deposit of the $291,086.66 check from VICTIM 1, the DEFENDANT drained PNC Bank Account 2318 through transactions including cash withdrawals, checks, and transfers to other bank accounts.

11. Relevant transactions involving PNC Account 2318, in the name similar to that of the TENNESSEE COMPANY, are summarized below:

Table 1: PNC Account 2318, in name similar to that of TENNESSEE COMPANY

| Date | Amount | Transaction |
| --- | --- | --- |
| 12/23/15 | $291,086.66 | Check deposit from VICTIM 1 |
| 12/29/15 | $5,000.00 | Cash withdrawal |
| 12/29/15 | $185,000.00 | Telephone transfer to PNC Account 6681 in the name of CO-CONSPIRATOR COMPANY 1 |
| 12/31/15 | $8,000.00 | Cash withdrawal |
| 12/31/15 | $70,000.00 | Wire transfer to CO-CONSPIRATOR COMPANY 2 |
| 1/4/16 | $15,000.00 | Cashier's check to CO-CONSPIRATOR COMPANY 3 |
| 1/4/16 | $5,000.00 | Cash withdrawal |
| 1/8/16 | $2,800.00 | Check to CO-CONSPIRATOR COMPANY 1 |

12. On or about December 29, 2015, a telephone transfer in the amount of $185,000 was initiated from PNC Account 2318 into PNC Bank account number ending in 6681 ("PNC Account 6681"), held in the name of CO-CONSPIRATOR COMPANY 1.

13. On or about January 8, 2015, a check was written in the amount of $2,800, drawn on PNC Account 2318, and deposited into PNC Account 6681, held in the name of CO-CONSPIRATOR COMPANY 1.

14. The DEFENDANT had previously opened PNC Account 6681 in the name of CO-CONSPIRATOR COMPANY 1 on or about September 14, 2015, using the false alias Glenn Briggs. CO-CONSPIRATOR COMPANY 1 was registered as a business entity in Maryland on or about August 17, 2015, listing Glenn Briggs as the resident agent.

15. Beginning on or about December 29, 2015, The DEFENDANT drained PNC Account 6681 in the name of CO-CONSPIRATOR COMPANY 1 through cash withdrawals, a cashier's check, a wire transfer, and other transactions within the District of Columbia and elsewhere.

16. Relevant transactions involving PNC Account 6681, held in the name of CO-CONSPIRATOR COMPANY 1, are summarized below:

Table 2: PNC Account 6681, CO-CONSPIRATOR COMPANY 1

| Date | Amount | Transaction |
| --- | --- | --- |
| **12/29/15** | **$185,000.00** | **Telephone transfer from PNC Account 2318** |
| 12/29/15 | $8,000.00 | Cash withdrawal |
| 12/29/15 | $140,000.00 | Wire transfer to CO-CONSPIRATOR COMPANY 4 |
| 12/31/15 | $7,500.00 | Cash withdrawal |
| 1/4/16 | $25,000.00 | Cashier's check to CO-CONSPIRATOR COMPANY 4 |
| **1/8/16** | **$2,800.00** | **Check deposit from PNC Account 2318** |
| 1/8/16 | $600.00 | ATM withdrawal |

### VICTIM 2

17. VICTIM 2 is an individual with an account at Capital One Bank.

18. On or about August 18, 2015, VICTIM 2 contacted Capital One Bank to provide notification that VICTIM 2 would be traveling internationally and would not be returning until on or about August 30, 2015. The call was received by CO-CONSPIRATOR 1. On or about the same day, August 18, 2015, an individual claiming to be VICTIM 2 placed an expedited check order for VICTIM 2's checking account. The checks were sent while VICTIM 2 was out of the country.

19.     On or about August 21, 2015, CO-CONSPIRATOR 1 placed a call impersonating VICTIM 2 into Capital One customer service to request a transfer in the amount of $130,000.00 from VICTIM 2's savings account into VICTIM 2's checking account. Within days of the telephone transfer, the $130,000.00 was liquidated through two fraudulent checks drawn on VICTIM 2's checking account, to wit, a check in the amount of $92,000.00 payable to CO-CONSPIRATOR COMPANY 5, which was negotiated on or about August 24, 2015; and a check in the amount of $43,000.00 payable to CO-CONSPIRATOR COMPANY 1, which was negotiated on or about August 25, 2015.

20.     The DEFENDANT opened Capital One Bank account number ending in 7983 ("Capital One Account 7983") in the name of CO-CONSPIRATOR COMPANY 1 on or about August 21, 2015, in the District of Columbia, using the false alias Glenn Briggs. The DEFENDANT deposited the $92,000.00 check from VICTIM 2's account into Capital One Account 7983 on or about August 25, 2015. The DEFENDANT then rapidly liquidated the proceeds through ATM withdrawals, cash withdrawals, outgoing checks, and debit card purchases.

**VICTIM 3**

21.     VICTIM 3 is an individual with a retirement account at Charles Schwab.

22.     On or about August 27, 2015, the third-party administrator of VICTIM 3's retirement account was fraudulently induced into making a wire transfer in the amount of $170,000.00 from VICTIM 3's retirement account into TD Bank account number ending in 2079 ("TD Bank Account 2079"). On or about September 4, 2015, the third-party administrator was fraudulently induced into making another wire transfer in the amount of $170,000.00 from VICTIM 3's retirement account into TD Bank Account 2079.

23. In fact, the DEFENDANT opened TD Bank Account 2079 on or about August 20, 2015, in the name of CO-CONSPIRATOR COMPANY 1. The DEFENDANT used the false alias Glenn Briggs in opening the bank account.

24. Following the fraudulent wire transfers from VICTIM 3's retirement account, the DEFENDANT rapidly liquidated the proceeds through ATM withdrawals, debit card purchases, and wire transfers in the District of Columbia and elsewhere.

25. Relevant transactions involving TD Bank Account 2079 are summarized below:

**Table 3: TD Bank Account 2079, CO-CONSPIRATOR COMPANY 1**

| Date | Amount | Transaction |
| --- | --- | --- |
| **8/27/15** | **$170,000.00** | **Wire transfer from VICTIM 3's retirement account** |
| 9/1/15 | $605.99 | ATM withdrawal |
| 9/1/15 | $80,000.00 | Wire transfer to CO-CONSPIRATOR COMPANY 4 |
| 9/1/15 | $60,000.00 | Wire transfer to CO-CONSPIRATOR COMPANY 6 |
| 9/1/15 | $5,000.00 | Cash withdrawal |
| 9/3/15 | $700.00 | ATM withdrawal |
| **9/4/15** | **$170,000.00** | **Wire transfer from VICTIM 3's retirement account** |
| 9/8/15 | $78,150.20 | Wire transfer to CO-CONSPIRATOR COMPANY 4 |
| 9/8/15 | $71,200.00 | Wire transfer to CO-CONSPIRATOR COMPANY 7 |
| 9/8/15 | $3,000.00 | Cash withdrawal |
| 9/11/15 | $18,000.00 | Wire transfer to CO-CONSPIRATOR COMPANY 4 |
| 9/14/15 | $603.50 | ATM withdrawal |

**VICTIM 4 and VICTIM 5**

26. VICTIM 4 is a company based in Branchburg, New Jersey. VICTIM 5 is a company based in Maplewood, New Jersey.

27. The ILLINOIS COMPANY is a company with an address in Chicago, Illinois.

28. On or about November 7, 2016, the DEFENDANT traveled by airline from Arlington, Virginia to Boston, Massachusetts, using the false alias Marc Bennett. On or about November 7, 2016, in Rhode Island, the DEFENDANT opened Citizens Bank account numbers ending in 6958 ("Citizens Bank Account 6958") and 6893 ("Citizens Bank Account 6893"), under

8

a name similar to that of the ILLINOIS COMPANY, except the accounts were associated with an address in Providence, Rhode Island. The DEFENDANT used the false alias Tony Johnson in opening the accounts.

29. On or about November 10, 2016, the DEFENDANT deposited a stolen check in the amount of $1,482,496.40 from VICTIM 4 and payable to the ILLINOIS COMPANY into Citizens Bank Account 6958. Also on or about November 10, 2016, the DEFENDANT deposited a stolen check in the amount of $332,418.89 from VICTIM 5 and payable to the ILLINOIS COMPANY into Citizens Bank Account 6893. The DEFENDANT was unsuccessful in withdrawing any of the funds from this scheme.

**VICTIM 6**

30. VICTIM 6 is a company based in Houston, Texas.

31. On or about January 31, 2017, VICTIM 6 was fraudulently induced into making a wire transfer in the amount of $1,792.68 into Wells Fargo bank account number ending in 3302 ("Wells Fargo Account 3302") in the name of CO-CONSPIRATOR COMPANY 8. On or about February 2, 2017, VICTIM 6 was fraudulently induced into making another wire transfer in the amount of $379,000.00 into Wells Fargo Account 3302. VICTIM 6 mistakenly believed it was making payments to a business partner.

32. In fact, the DEFENDANT opened Wells Fargo Account 3302 on or about December 19, 2016, in the name of CO-CONSPIRATOR COMPANY 8, using the false alias Brian Hinsley.

33. Following the fraudulent wire transfers from VICTIM 6, the DEFENDANT rapidly liquidated the proceeds through ATM withdrawals, cash withdrawals, debit card purchases, and wire transfers in the District of Columbia and elsewhere.

34. Relevant transactions involving Wells Fargo Account 3302 are summarized below:

Table 4: Wells Fargo Account 3302, CO-CONSPIRATOR COMPANY 8

| Date | Amount | Transaction |
| --- | --- | --- |
| 1/31/17 | $1,792.68 | Wire transfer from VICTIM 6 |
| 2/2/17 | $379,000.00 | Wire transfer from VICTIM 6 |
| 2/2/17 | $92,750.15 | Check to CO-CONSPIRATOR COMPANY 9 |
| 2/3/17 | $6,670.00 | Check to CO-CONSPIRATOR 2 |
| 2/3/17 | $5,920.75 | Check to CO-CONSPIRATOR 3 |
| 2/3/17 | $6,815.55 | Check to CO-CONSPIRATOR 4 |
| 2/3/17 | $7,260.30 | Check to CO-CONSPIRATOR 5 |
| 2/3/17 | $87,540.25 | Check to CO-CONSPIRATOR COMPANY 10 |
| 2/3/17 | $98,240.50 | Check to CO-CONSPIRATOR COMPANY 11 |
| 2/6/17 | $304.99 | ATM withdrawal |
| 2/7/17 | $200.00 | ATM withdrawal |
| 2/7/17 | $5,000.00 | Cash withdrawal |
| 2/7/17 | $5,470.80 | Check to CO-CONSPIRATOR 3 |
| 2/7/17 | $6,250.40 | Check to CO-CONSPIRATOR 6 |
| 2/8/17 | $8,500.00 | Check to CO-CONSPIRATOR 4 |
| 2/8/17 | $4,500.00 | Check to CO-CONSPIRATOR 3 |
| 2/8/17 | $5,750.75 | Check to CO-CONSPIRATOR 7 |
| 2/8/17 | $7,140.25 | Check to CO-CONSPIRATOR 8 |
| 2/8/17 | $6,407.40 | Check to CO-CONSPIRATOR 9 |
| 2/8/17 | $7,540.00 | Check to CO-CONSPIRATOR 10 |
| 2/8/17 | $8,237.15 | Check to CO-CONSPIRATOR 11 |
| 2/9/17 | $5,850.00 | Check to CO-CONSPIRATOR 12 |

35. The DEFENDANT opened Citibank account number ending in 8636 ("Citibank Account 8636") on or about December 20, 2016, in the name of CO-CONSPIRATOR COMPANY 9, using the false alias Brian Hinsley.

36. On or about February 2, 2017, the DEFENDANT deposited the above-mentioned check in the amount of $92,750.15 into Citibank Account 8636 at a Citibank branch in the District of Columbia. Following the check deposit, the DEFENDANT drained the account through transactions including a cash withdrawal, ATM withdrawals, and debit card purchases.

37. The DEFENDANT opened Bank of America account number ending in 6583 ("Bank of America Account 6583") on or about September 27, 2016, in the name of CO-CONSPIRATOR COMPANY 10, using the false alias Marc Bennett.

38. On or about February 2, 2017, the DEFENDANT deposited the above mentioned check in the amount of $87,540.25 payable to CO-CONSPIRATOR COMPANY 10 into Bank of America Account 6583 at a Bank of America branch in the District of Columbia. Following the check deposit, the DEFENDANT drained the account through transactions including cash withdrawals, outgoing wire transfers, and a cashier's check in the amount of $48,540.40, purchased on or about February 6, 2017, and payable to CO-CONSPIRATOR COMPANY 9.

**VICTIM 7**

39. VICTIM 7 is an individual in New Jersey.

40. On or about August 2, 2017, VICTIM 7 was fraudulently induced into making a wire transfer in the amount of $63,000.00 into TD Bank account number ending in 2526 ("TD Bank Account 2526"). VICTIM 7 mistakenly believed the payment was going to an attorney in connection with the purchase of a home.

41. In fact, the DEFENDANT opened TD Bank Account 2526 on or about May 15, 2017 in the name of CO-CONSPIRATOR COMPANY 12, using the false alias John Dwayne Lawler. On or about the same date, the DEFENDANT opened several other associated TD Bank accounts in the name of CO-CONSPIRATOR COMPANY 12, using the false alias John Dwayne Lawler, including account numbers ending in 2542, 2568, and 2534.

42. Following the fraudulent wire transfer from VICTIM 7, the DEFENDANT rapidly liquidated the proceeds through transactions including online transfers to associated accounts in the name of CO-CONSPIRATOR COMPANY 12, ATM withdrawals, and checks.

43. Relevant transactions involving TD Bank Account 2526 are summarized below:

Table 5: TD Bank Account 2526, CO-CONSPIRATOR COMPANY 12

| Date | Amount | Transaction |
|---|---|---|
| 8/2/17 | $63,000.00 | Wire transfer from VICTIM 7 |
| 8/2/17 | $6,000.00 | Online transfer to TD Bank account number ending in 2542 in the name of CO-CONSPIRATOR COMPANY 12 |
| 8/2/17 | $5,200.00 | Online transfer to TD Bank account number ending in 2568 in the name of CO-CONSPIRATOR COMPANY 12 |
| 8/2/17 | $5,000.00 | Online transfer to TD Bank account number ending in 2534 in the name of CO-CONSPIRATOR COMPANY 12 |
| 8/2/17 | $703.00 | ATM withdrawal |
| 8/3/17 | $5,965.00 | Check to CO-CONSPIRATOR 13 |
| 8/3/17 | $7,950.00 | Check to CO-CONSPIRATOR 14 |
| 8/3/17 | $25,000.00 | Check to CO-CONSPIRATOR 15 |
| 8/3/17 | $6,785.00 | Check to CO-CONSPIRATOR 16 |
| 8/4/17 | $704.99 | ATM withdrawal |
| 8/4/17 | $5,000.00 | Online transfer from TD Bank account number ending in 2568 in the name of CO-CONSPIRATOR COMPANY 12 |
| 8/7/17 | $2,000.00 | Online transfer from TD Bank account number ending in 2542 in the name of CO-CONSPIRATOR COMPANY 12 |
| 8/7/17 | $600.00 | Online transfer to TD Bank account number ending in 2534 in the name of CO-CONSPIRATOR COMPANY 12 |
| 8/8/15 | $1,800.00 | Online transfer to TD Bank account number ending in 2534 in the name of CO-CONSPIRATOR COMPANY 12 |

44.     Following the above-mentioned online transfer in the amount of $6,000.00 into TD Bank account number ending in 2542, the DEFENDANT drained the account through an ATM withdrawal, debit card purchases, and a return online transfer in the amount of $2,000.00 back into TD Bank Account 2526 on or about August 7, 2017.

45.     Following the above-mentioned online transfer in the amount of $5,200.00 into TD Bank account number ending in 2568, the DEFENDANT made a return online transfer in the amount of $5,000.00 back into TD Bank Account 2526 on or about August 4, 2017.

46.     Following the above-mentioned online transfers in the amounts of $5,000.00, $600.00, and $1,800.00 into TD Bank account number ending in 2534, the DEFENDANT drained the account through ATM withdrawals and debit card purchases in the District of Columbia and elsewhere.

**VICTIM 8**

47.     VICTIM 8 is a public school system in a U.S. city.

48.     On or about September 8, 2017, VICTIM 8 was fraudulently induced into making an ACH payment in the amount of $478,440.69 into BB&T account number ending in 3627 ("BB&T Account 3627"). On or about September 15, 2017, VICTIM 8 was fraudulently induced into making another ACH payment in the amount of $60,000.00 into BB&T Account 3627.

49.     In fact, the DEFENDANT opened BB&T Account 3627 on or about June 29, 2017, in the name of CO-CONSPIRATOR COMPANY 13, using the false alias Christopher Lowell.

50.     Following the fraudulent wire transfer from VICTIM 7, the DEFENDANT rapidly liquidated the proceeds through transactions including online transfers to an associated BB&T account in the name of CO-CONSPIRATOR COMPANY 13, ATM withdrawals in the District of Columbia and elsewhere, and checks.

51.     Relevant transactions involving BB&T Account 3627 are summarized below:

**Table 6: BB&T Account 3627, CO-CONSPIRATOR COMPANY 13**

| Date | Amount | Transaction |
|---|---|---|
| 9/8/17 | $478,440.69 | **ACH transfer from VICTIM 8** |
| 9/8/17 | $20,000.00 | Online transfer to BB&T account number ending in 3635 in the name of CO-CONSPIRATOR COMPANY 13 |
| 9/11/17 | $500.00 | ATM withdrawal |
| 9/11/17 | $91,530.47 | Check to CO-CONSPIRATOR 17 |
| 9/12/17 | $87,421.10 | Check to CO-CONSPIRATOR COMPANY 14 |
| 9/13/17 | $151,364.19 | Check to CO-CONSPIRATOR COMPANY 15 |
| **9/15/17** | **$60,000.00** | **ACH transfer from VICTIM 8** |
| 9/18/17 | $116,345.64 | Check to CO-CONSPIRATOR 18 |
| 9/18/17 | $50,000.00 | Online transfer to BB&T account number ending in 3635 in the name of CO-CONSPIRATOR COMPANY 13 |
| 9/19/17 | $600.00 | ATM withdrawal |

52.     Following the above-mentioned online transfers in the amounts of $20,000.00 and $50,000.00 into BB&T account number ending in 3635, the DEFENDANT partially drained the

13

account through debit card purchases and an ATM withdrawal in the amount of $600.00 on or about September 19, 2017.

54. In addition, on or about September 15, 2017, VICTIM 8 was fraudulently induced into making an ACH payment in the amount of $2,106,203.43 into TD Bank Account 2526. As noted above, TD Bank Account 2526 was opened by the DEFENDANT under the name CO-CONSPIRATOR COMPANY 12, using the false alias John Dwayne Lawler. This fraudulent payment was reversed on or about September 22, 2017, before the DEFENDANT could access the funds.

**VICTIMS 9 and 10**

54. VICTIM 9 is a company based in Austin, Texas. VICTIM 10 is a company based in Trophy Club, Texas.

55. On or about September 6, 2017, an envelope was shipped via U.S. Mail to the DEFENDANT's residence in the District of Columbia. The envelope was addressed to a close relation of the DEFENDANT. The envelope contained an inner envelope that held two checks.

56. The first check was issued on or about August 3, 2017 by VICTIM 9, in the amount of $29,209.48. The check was originally made payable to a business partner of VICTIM 9, but the check was altered to appear payable to CO-CONSPIRATOR COMPANY 19.

57. The second check was issued on or about August 24, 2017 by VICTIM 10, in the amount of $23,948.00. The check was originally made payable to a business partner of VICTIM 10, but the check was altered to appear payable to CO-CONSPIRATOR 19.

**SUMMARY**

1. As stated in the preceding paragraphs, the DEFENDANT knowingly entered into a conspiracy with co-conspirators known and unknown to the grand jury to commit a variety of bank

fraud schemes, including stolen check and BEC schemes, totaling $5,717,596.23. Further, the DEFENDANT knowingly entered into a conspiracy with co-conspirators known and unknown to the grand jury to launder the resulting proceeds by knowingly conducting and attempting to conduct transactions to drain the fraud proceeds from the bank accounts, including by means of cash withdrawals, personal checks, cashier's checks, and wire transfers to other accounts under the dominion and control of the DEFENDANT or other members of the conspiracy. The purpose of these transactions was to conceal the nature, location, source, ownership or control of the fraud proceeds.

2. Many of the transactions and attempted transactions involving fraud proceeds were in amounts of greater than $10,000.00.

3. The DEFENDANT personally obtained at least $1,705,320.03 in bank fraud proceeds that were successfully deposited into accounts under the DEFENDANT's dominion and control.

4. PNC Bank, Capital One Bank, TD Bank, Citizens Bank, Wells Fargo Bank, Citibank, Bank of America, and BB&T are each financial institutions, the deposits of which are insured by the Federal Deposit Insurance Corporation.

5. The DEFENDANT waives any challenge to venue in the District of Columbia.

6. The facts contained herein are not complete in all details. Instead, they are provided in order to demonstrate that the elements of the charged offense have been met for purposes of a plea in this case. These are not all of the facts known to the Defendant and to the government.

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. BAR NO. 472845

BY: _____

Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7153 (Brown)
Christopher.Brown6@usdoj.gov

### Defendant's Acceptance

I have read this Statement of the Offense and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Date: 10/26/2018

Michael Afram Orji
Defendant

### Defense Counsel's Acknowledgment

I have reviewed every part of this Statement of the Offense with my client. It accurately and completely sets forth the Statement of the Offense agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

Date: 10/26/18

Robert C. Bonsib, Esq.
Attorney for Defendant