UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 18-CR-68 (BAH) |
| | : | |
| MICHAEL AFRAM ORJI, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Supplemental Memorandum in Aid of Sentencing in response to the Court's Minute Order of January 28, 2019 (the "January 28 Minute Order"), directing the government to address the following issues:

(1) Whether the government agrees that the Probation Office's guideline determination is correct, *see* [25] Presentence Report ("PSR") ¶¶ 161–63, since "'improperly calculating[] the Guidelines range' is 'significant procedural error,' . . . that rises to the level of plain error," *United States v. Brown*, 892 F.3d 385, 400 (D.C. Cir. 2018) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007));

(2) If the government disputes the Probation Office's guideline determination, as indicated by the government's belief that "its guideline calculation analysis set forth in the plea agreement is correct," *see* PSR at 45, the government is directed to identify, explain and provide legal analysis for the specific component(s) of the guideline determination being disputed;

(3) If the government agrees that the Probation Office's guideline determination is correct, the bases for a variance or downward departure serving as a predicate for the government's recommendation that the defendant should be sentenced to "no more than 87 months," Gov't's Mem. at 19;

(4) The steps, if any, the government was able to take to protect against any losses to any victims resulting from the defendant's actions in D.C. jail, which actions included instructing co-conspirators on the cashing of apparently stolen checks, *see* PSR ¶ 78; and

  (5) The government's position on the defendant's objections to the Probation Office's guideline determination, including:

  (a) Whether a role adjustment, as recommended in the PSR ¶ 92, is supported by the facts set out in the PSR, to which facts the government did not object, *see id.* at 45;

  (b) Whether the sophisticated means enhancements under U.S.S.G. §§ 2B1.1(b)(10)(C) and 2S1.1(b)(3), *see* PSR ¶¶ 88, 90, are both warranted, *see* Gov't's Mem. at 18 n.2, and if so, how that position may be reconciled with the government's position that "its guideline calculation analysis set forth in the plea agreement is correct and should be applied by the Court," PSR at 45, which position implies that the Probation Office's guideline determination is incorrect; and

  (c) Whether a "downward departure" from the Probation Office's recommended Criminal History Category of V is warranted, in light of the defendant's criminal history, which includes, *inter alia*, convictions for theft, identify theft, receiving stolen property, and simple assault, as well as charges for theft, identity theft, robbery with a deadly weapon, first degree assault, and fraud, *see id.* at 46–47; *see also id.* ¶¶ 99–121.

In response, the government respectfully states as follows:

**1. Government's Position as to Whether the Probation Office's Guideline Determination Is Correct**

The government is bound by the commitments it made in the Plea Agreement in this case, *see* ECF No. 17. Plea agreements are treated as binding contracts between the parties, and ambiguities in plea agreements are strictly construed against the government. *See, e.g.*, *In re Sealed Case*, 702 F.3d 59, 63 n.2 (D.C. Cir. 2012). The government is therefore mindful of its obligation to adhere to the terms of the Plea Agreement, which requires the government to limit its sentencing allocution to "no more than the middle of the Estimated Guidelines Range, that is, no more than 87 months." ECF No. 17, at 5.

Section 6 of the Plea Agreement, however, states that the government "reserve[s] the right to inform the presentence report writer and the Court of any relevant facts," and further states:

> In the event that the Court considers any Sentencing Guidelines adjustments, departures, or calculations different from those agreed to and/or estimated in this Agreement . . . the parties reserve the right to answer any related inquiries from the Court and to allocute for a sentence within the Guidelines range, as ultimately determined by the Court, even if the Guidelines range ultimately determined by the Court is different from the Estimated Guidelines Range calculated herein [*i.e.*, within the Plea Agreement].

ECF No. 17, at 6.   Consistent with this provision of the Plea Agreement, and in response to the Court's explicit inquiry contained in the January 28 Minute Order, the government responds as follows:

After further consideration of the Guidelines calculation contained in the PSR, the government believes that the Probation Office's guideline determination is correct.  *First*, the government notes that the Plea Agreement and the PSR both calculate the same offense level for Count One, Conspiracy To Commit Bank Fraud.  The parties and the PSR agree that the base offense level is 7; there is an 18-level increase because the losses were at least $3,500,000 but less than 9,500,000; there is a 2-level increase because the offense involved 10 or more victims; and, finally, there is a 2-level increase because the offense involved sophisticated means—resulting in an offense level of 29 for Count One.   *See* ECF No. 17, at 3; PSR, ¶ 88.

*Second*, with the benefit of further consideration, the government agrees with the PSR's Guidelines calculation for Count Two, Conspiracy To Launder Monetary Instruments.   The point of divergence is whether to apply the first or second prong of the relevant Guidelines provision for money laundering offenses:   U.S.S.G. § 2S1.1(a)(1) or (a)(2).   The first prong, subsection (a)(1) generally applies to a defendant who committed the underlying criminal offense that generated the

criminal proceeds, or would otherwise be held liable for such offense. *See* U.S.S.G. § 2S1.1(a)(1)(A) & (B) (applies if defendant (A) "committed" the offense "or would be accountable" for it as relevant conduct, and (b) the offense level "can be determined"). The second prong, subsection (a)(2), applies "otherwise," and courts have explained that it is intended to apply in situations where a defendant acts as a "third-party launderer" but was not involved in the underlying offense. *See* U.S.S.G. § 2S1.1(a)(2); *see generally United States v. Campbell*, 764 F.3d 874, 977 (8th Cir. 2014) (explaining two prongs of § 2S1.1(a)(1)-(2)). Here, the government now agrees with the PSR that it is appropriate to apply the first prong, subsection (a)(1), because the Defendant conspired to commit, and in some cases committed himself, the underlying bank fraud offenses charged in Count One. *See* U.S.S.G. § 1B1.3(a)(1)(A)-(B) (relevant conduct includes defendant's own acts and omissions as well as "acts and omissions of others" that were "within the scope" of jointly undertaken activity, "in furtherance of that criminal activity," and "reasonably foreseeable in connection with that criminal activity").

Moreover, out-of-circuit case law suggests that if the factual predicates of the first prong, subsection (a)(1), are satisfied, then the Court is required to apply subsection (a)(1) rather than (a)(2). *See United States v. Hanna*, 661 F.3d 271, 291-92 (6th Cir. 2011) ("Under U.S.S.G. § 2S1.1(a)(1), the district judge is *required* to use the Base Offense Level for the underlying offense if it can be determined. . . . [T]he district judge is not free to ignore subsection (a)(1) in favor of (a)(2) . . .") (emphasis in original). The government has been unable to locate any binding or within-Circuit authority on this issue. Although the *Hanna* court did not fully explain its analysis as to the two prongs of § 2S1.1(a)(1)-(2), its conclusion is consistent with the plain

language of the Guideline, which provides that subsection (a)(1) applies "if" conditions (A) and (B) are satisfied, "or" subsection (a)(2) applies "otherwise."

The government acknowledges that this approach differs from that in the Plea Agreement. In essence, when reaching its good faith estimate of the relevant Guidelines range in the Plea Agreement, the government believed that the second prong of § 2S1.1, subsection (a)(2), would apply. That resulted in a lower offense level for the money laundering conspiracy in Count Two than for the underlying bank fraud conspiracy in Count One, and therefore a lower overall offense level. The government now understands it erred in doing so, and missed that the first prong of § 2S1.1, subsection (a)(1), should have applied.

The government agrees with the rest of the PSR's Guideline calculation for Count Two. Namely, the government agrees that there is a 2-level increase because the Defendant was convicted under 18 U.S.C. § 1956; and there is an additional 2-level increase because the offense involved sophisticated laundering—including laundering transactions to third parties and additional layers of bank accounts, shell corporations, and false identities. *See* ECF No. 17, at 3; PSR, ¶ 88.

Finally, the PSR recommends a 3-level role enhancement pursuant to U.S.S.G. § 3B1.1(b)(2)(B) because the Defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive. The government agrees with the facts underlying this determination. The Defendant was a manager or supervisor of the bank fraud and money laundering conspiracy, as illustrated by, *inter alia*, his declaration in a recorded jail call that CO-CONSPIRATOR B gave CO-CONSPIRATOR A "some work to do" and "I was supervising." *See* Gov't Sentencing Mem., ECF No. 28, at 15. And the criminal conspiracy

involved five or more participants, as illustrated by the Statement of Offense that lists as many as 19 individual co-conspirators.  *See* ECF No. 18.

To respond even more directly to the Court's question, given its review of the facts and Guidelines in response to the Court's inquiry (as the Plea Agreement specifically authorizes it to do), the government can no longer take the position earlier articulated to the PSR writer that "its guideline calculation analysis set forth in the plea agreement is correct and should be applied by the Court," PSR at 45.

### 2. If the Government Disputes the Probation Office's Guideline Determination, the Legal Analysis for the Specific Components Being Disputed

See Section 1, *supra*.

### 3. If the Government Agrees that the Probation Office's Guideline Determination Is Correct, the Bases for a Variance or Downward Departure

Under the Plea Agreement, the government is allowed "to inform the presentence report writer and the Court of any relevant facts," and "to answer any related inquiries from the Court" regarding a Guidelines calculation other than that contemplated under the Plea Agreement.  ECF No. 17, at 6.  However, at the time of the plea, the government was also following its best understanding (now a misunderstanding) of how the facts applied to the law when it reached, in good faith, a calculation of the Guidelines range that served as the premise for the Plea Agreement. Moreover, the government specifically agreed to limit its sentencing allocution to "no more than the middle of the Estimated Guidelines Range, that is, no more than 87 months."  ECF No. 17, at 5.

Thus, the government's allocution intends to, and does, meet its obligations under the Plea Agreement, its obligation to be fair to the Defendant who relied upon the government's good faith

agreement, and the importance that the government—in its dealing with all parties—stand by its agreements.  Having come to its allocution under these circumstances, the government now can only note its earlier agreement, emphasize that its allocution therein was guided by its understanding of the facts of the offense and the Defendant's history known at the time of the plea, and the related Guidelines (mis)calculation, all of which then led it to the conclusion that a sentence of 87 months was an appropriate sentence under 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

4. **The Steps, If Any, Taken To Protect Against Any Losses to Any Victims Resulting from the Defendant's Actions in D.C. Jail**

Unfortunately, the government did not discover the Defendant's communications from D.C. Jail in real time, but only later, as part of the ongoing investigation into unindicted conduct by the Defendant and his co-conspirators.  The government has taken steps, however, to investigate the events referenced in the jail calls.  In the event the Court requires further information, the government respectfully requests an opportunity to file a supplemental response *ex parte* and under seal.

5. **The Government's Position on the Defendant's Objections to the PSR**

    a. **Whether a Role Adjustment Is Supported by the Facts Set Out In the PSR**

See Section 1, *supra*.

    b. **Whether the Sophisticated Means Enhancements under U.S.S.G. §§ 2B1.1(b)(10)(C) and 2S1.1(b)(3) Are Both Warranted**

On this issue, the Plea Agreement and the PSR are in agreement.  Pursuant to *both* the Plea Agreement *and* the PSR, it is appropriate to apply both the "sophisticated means" enhancement under § 2B1.1(b)(10)(C) and the "sophisticated laundering" enhancement under

§ 2S1.1(b)(3).  *See* ECF No. 17, at 3 (applying both enhancements); PSR, ¶¶ 88, 90 (same). "Because the two enhancements recognize and punish different harms from fundamentally different conduct, application of both enhancements is not impermissible double counting." *United States v. Cabrera*, 635 F. App'x 801, 808, 2015 WL 9487925 (11th Cir. Dec. 30, 2015) (unpublished); *see generally* Gov't Sentencing Mem., ECF No. 28, at 18 & n.2 (addressing applicability of both enhancements).

### c. Whether a Downward Departure from the PSR's Recommended Criminal History Category of V Is Warranted

The Government does not agree that a departure from the PSR's recommended criminal history category is warranted on the ground that it over-represents the seriousness of his criminal history.  As the January 28 Minute Order notes, the Defendant's criminal history includes theft, identity theft, receiving stolen property, and simple assault—all of which are serious criminal offenses in themselves and show a pattern of criminal activity that appears to have continued into the conspiracies charged in this case.  The government further notes that the two simple assault counts arising from the Defendant's arrest on or about April 8, 2016, were originally charged as Assault on a Police Officer and Destruction of Property, and the offense conduct involved elements of more serious offenses, such as bank fraud.  *See* PSR, ¶ 107; Gov't Sentencing Mem., at 23-24. The government therefore believes the PSR's criminal history calculation is appropriate.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. BAR NO. 472845


BY: */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel:   (202) 252-7153
Fax:   (202) 514-6010
Christopher.Brown6@usdoj.gov