# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL AFRAM ORJI,<br><br>    Defendant. | Criminal Action No. 18-cr-68 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM AND ORDER

Upon consideration of defendant Michael Afram Orji's *pro se* letter, dated June 19, 2020, which letter is construed as a motion to reduce sentence re First Step Act of 2018 or for compassionate release ("Def.'s Mot."), ECF No. 68, the memorandum submitted by the government in opposition ("Gov't's Opp'n"), ECF No. 69, and the entirety of the underlying record, defendant's motion is **DENIED** for the reasons set out below.

## I.    BACKGROUND

In 2018, defendant pled guilty to a two-count Information charging Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349 (Count 1), and Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h) (Count 2).  Plea Agreement at 1, ECF No. 17.  These charges stemmed from defendant's leading role in a large, sophisticated bank fraud and money laundering conspiracy that lasted for more than two years, involved numerous co-conspirators, targeted at least ten victims, and resulted in actual losses of more than $900,000 and intended losses of $5.7 million.  Gov't's Opp'n at 1–2; Gov't's Mem. in Aid of Sentencing ("Sentencing Mem.") at 1–2, ECF No. 28.  Defendant's fraud schemes "primarily involved either stolen checks or business e-mail compromise ('BEC') schemes."  Sentencing Mem. at 2; Gov't's Opp'n at 1.  He used forged driver's licenses, "a number of false aliases, fraudulent shell

1

corporations, and a network [of] co-conspirators to deposit the stolen checks or receive the BEC proceeds, and then rapidly launder them through various means." Gov't's Opp'n at 1–2; *see also* Sentencing Mem. at 2–13. Defendant was arrested on November 20, 2017, as a result of an extensive investigation by federal and D.C. law enforcement. Gov't's Opp'n at 2.

On June 21, 2019, defendant was sentenced to 120 months of imprisonment for each count, to run concurrently, Judgment at 3, ECF No. 42, followed by 60 months of supervised release on Count 1 and 36 months of supervised release on Count 2, to run concurrently, *id.* at 4. Defendant was also ordered to pay restitution in the amount of $905,274.98, *id.* at 8, and a forfeiture money judgment of $1,705,320.03, and forfeited $75,254.48 in seized funds associated with the conspiracy, Consent Prelim. Order of Forfeiture at 3, ECF No. 42-1. According to the Bureau of Prisons ("BOP"), defendant is currently scheduled to be released on May 29, 2026. Gov't's Opp'n at 2.

Approximately one year after the sentence was imposed, defendant, proceeding *pro se*, submitted a letter, dated June 19, 2020, to the Court requesting "a reduction in sentence pursuant to the 1st Step Act," Def.'s Mot. at 1, or "release to home confinement" in light of the CARES Act's expansion of the availability of home confinement due to emergency conditions related to the COVID-19 pandemic, *id.* at 2, which letter has been construed as a motion to reduce sentence under the First Step Act or for compassionate release. Defendant expresses remorse for his actions. *Id.* at 2–3. He requests a reduction in sentence or compassionate release due to a diagnosis of "high blood pressure" that has "gone down" and the general risk posed by the COVID-19 pandemic. *Id.* at 2.

2

## II.   LEGAL STANDARD

The First Step Act of 2018, enacted on December 21, 2018, among other things, amended 18 U.S.C. § 3582(c), First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194 (codified at 18 U.S.C. § 3582(c)), which addresses "[m]odification of an imposed term of imprisonment," 18 U.S.C. § 3582(c).  Section 3582(c) generally bars a court from "modify[ing] a term of imprisonment once it has been imposed," *id.*, except in limited circumstances, including upon a motion by the Director of the BOP for a sentence reduction, *id.* § 3582(c)(1)(A); *see also United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006) (citing 18 U.S.C. § 3582) (noting "that Congress has, in language with a somewhat jurisdictional flavor, limited district court authority to *modify* sentences").  Section 603(b) of the First Step Act expanded this exception to authorize a defendant to move directly in court for a sentence reduction after having "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  To ensure that this remedy is accessible, the First Step Act further directs "that all Bureau of Prisons facilities regularly and visibly post . . . and make available to prisoners upon demand, notice of . . . a defendant's ability to request a sentence reduction pursuant to" § 3582(c)(1)(A), as well as "the procedures and timelines for initiating and resolving" such requests and "the right to appeal a denial of a request . . . after all administrative rights to appeal within [BOP] have been exhausted."  *Id.* § 3582(d)(2)(C).

The First Step Act left intact the original statutory restrictions in § 3582(c)(1)(A) on resolving motions for reductions in sentence or compassionate release submitted by BOP, and those restrictions now also govern motions filed by defendants after exhausting BOP's

administrative process.  Specifically, in resolving such a motion, the court may reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *id.* § 3582(c)(1)(A), and upon making two findings: first, that "extraordinary and compelling reasons warrant such a reduction," *id.* § 3582(c)(1)(A)(i);[1] and, second, "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," *id.* § 3582(c)(1)(A).

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended by the Sentencing Commission on November 1, 2016, applies to motions for reduction of terms of imprisonment under § 3582(c)(1)(A), and provides guidance as to both of the required findings under this statutory provision.  U.S.S.G. § 1B1.13 states that reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age requirements and a minimum incarceration period, U.S.S.G. § 1.B1.13(1)(A) and (B); (2) the defendant poses no "danger to the safety of any other person or the community," *id.* § 1B1.13(2); and (3) "[t]he reduction is consistent with this policy statement," *id.* § 1B1.13(3).[2]  The commentary to this policy statement then describes "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction," including the medical condition of the

[1]	In addition to "extraordinary and compelling reasons," the court may find a sentence reduction warranted for a defendant who is "at least 70 years of age" and "has served at least 30 years in prison," when BOP has determined "that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. § 3142(g)]."  18 U.S.C. § 3582(c)(1)(A)(ii).
[2]	U.S.S.G. § 1B1.13 has not been updated since the enactment of the First Step Act, due to the lack of a voting quorum on the U.S. Sentencing Commission.  *See* U.S. Sent'g Comm'n, *Annual Report*, at 3 (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.  Consequently, this policy statement is framed to provide guidance in resolving a "motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)."  U.S.S.G. § 1B1.13.  Nonetheless, this policy statement provides guidance in resolving compassionate release motions filed directly by defendants and must be considered to ensure any reduction is at least "consistent with" this applicable policy statement.  18 U.S.C. § 3582(c)(1)(A); *see also United States v. Tobias*, No. 19-143 (BAH), 2020 WL 4673414, at *4 (D.D.C. Aug. 12, 2020).

4

defendant, who "is suffering from a terminal illness" or has a chronic and "substantially diminish[ed] [] ability . . . to provide self-care" within the prison environment, *id.* § 1B1.13, cmt. n.1(A)(i)–(ii), and other factors related to the defendant's age, time served, and family circumstances, *see id.* cmt. n.1(B)–(D).

## III.   DISCUSSION

The government opposes defendant's motion for a reduction in sentence or compassionate release, contending that he fails to qualify for relief under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, because he has not exhausted administrative remedies and, on the merits, he has not demonstrated "extraordinary or compelling reasons for release," while his "history of recidivism . . . favor[s] continued imprisonment and raise[s] the risk that will he pose a danger to the community if released."  Gov't's Opp'n at 4–5.  The government further maintains that this Court "lacks authority" to reduce defendant's sentence of imprisonment to a term of home confinement under the CARES Act.  *Id.* at 5.

The government is correct that, on the current record, defendant has failed to show proper exhaustion of his administrative remedies before seeking judicial intervention for compassionate release or a reduction in sentence, as required under 18 U.S.C. § 3582(c)(1)(A).  His letter makes no reference to presenting his request to BOP for consideration.  *See* Def.'s Mot.  Without any indication that defendant has petitioned BOP to review his case and move on his behalf for compassionate release or a reduction in sentence under the First Step Act, and that either his petition was denied or thirty days have lapsed, defendant has not shown that he has satisfied the statutory exhaustion requirement in § 3582(c)(1)(A).

Even if defendant had exhausted his administrative remedies, his motion would still be denied because he has fallen short of showing "extraordinary and compelling reasons"

warranting a reduction in sentence or compassionate release.  The only grounds for release or reduction in sentence provided by defendant are his history of hypertension and the general risks associated with the COVID-19 pandemic.  *See* Def.'s Mot.  As the government acknowledges, Gov't's Opp'n at 6, "chronic hypertension may . . . present an extraordinary and compelling reason for compassionate release during the COVID-109 pandemic" because "individuals with hypertension 'might be at an increased risk for severe illness from COVID-19,'" *id.* (quoting *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (Aug. 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html).  As a result, when a "defendant's hypertension presents a chronic condition from which he is not expected to recover, . . . it may present 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care'" in the prison environment.  *Id.* at 7 (quoting U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)).

The government contends that the record does not establish whether defendant's hypertension is severe enough to merit release or reduction in sentence because "[t]here are no medical records to confirm [his] diagnosis" and "[t]he defendant, by his own admission, appears to be managing his condition well."  *Id.*; *see also* Def.'s Mot. at 2 ("[T]he only thing I was diagnosed with was high blood pressure, and I constantly work out, so they say it's gone down.").  On this record, defendant has not carried his burden of demonstrating that his hypertension is an extraordinary and compelling reason for release.  *Cf. Tobias*, 2020 WL 4673414, at *4 (denying compassionate release to a defendant with diagnoses of liver disease and pulmonary fibrosis in part because "[d]efendant's medical records . . . reflect that his conditions are currently well-managed and those records do not evince any complaints arising from either condition since he began serving his term of imprisonment").

Further, even upon a showing of extraordinary and compelling reasons, compassionate release or a reduction in sentence must be denied unless the Court determines defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). As described above, defendant was convicted of and sentenced for playing a leading role in a multi-year bank fraud and money laundering conspiracy with numerous victims, actual losses of $900,000, and intended losses in the millions. The sentence imposed, which was itself below the recommended Guidelines range due to several downward variances, reflects the gravity of these offenses. Statement of Reasons at 5–6, ECF No. 43. Defendant also has a significant history of recidivism, with seven prior convictions and as many as eleven additional arrests indicated in the final presentence investigation report. *See* Presentence Investigation Report ("PSR") at 19–31, ECF No. 25. His criminal history includes convictions for being a felon in possession of a firearm, aggravated identity theft, making a false claim of citizenship, and assault. *Id.* at 23–24, 26. The conspiracy in this case began as early as August 2015, Sentencing Mem. at 1–2, only months after defendant completed a previous sentence of incarceration and supervised release in January 2015, PSR at 23. Defendant was arrested twice during the conspiracy period for fraud-related activity, but, undeterred, continued in the conspiracy. *Id.* at 31. That he now expresses a commitment to "never . . . make the same mistakes that brought me back to prison," Def.'s Mot. at 4, does not obviate either the serious risk to others of his underlying offense conduct or the substantial indications that, once released, defendant may well commit further offenses.

Finally, this Court lacks the authority to release defendant to home confinement under the CARES Act. Placement of a prisoner is in the hands of the BOP, and "a designation of a place of imprisonment . . . is not reviewable by any court." 18 U.S.C. § 3621(b). Under 18 U.S.C. § 3624(c)(2), as amended by the First Step Act, the BOP, not the courts, has "the authority" to

place prisoners into home confinement.  Although the CARES Act extended the authorized term

of home confinement under this provision, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (to

be codified at 18 U.S.C. § 3621 note), the law did not grant to courts the authority to determine

whether a prisoner should be placed on home confinement, *see, e.g.*, *United States v. Guzman*,

No. 3:16-CR-85, 2020 WL 4515476, at *6 (M.D. Pa. Aug. 5, 2020); *United States v. McCann*,

No. 5:13-52, 2020 WL 1901089, at *3 (E.D. Ky. Apr. 17, 2020) ("While the CARES Act gives

the BOP broad discretion to expand the use of home confinement during the COVID-19

pandemic, the Court has no authority under [§ 12003(b)(2) of the CARES Act] to order that a

prisoner be placed on home confinement." (citation omitted)); *United States v. Doshi*, No. 13-cr-

20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) ("[T]he authority to [place a

prisoner on home confinement] is squarely allocated to the Attorney General, under whose

authority is the Bureau of Prisons.").  Accordingly, without such statutory authorization,

defendant's request for release to home confinement must be denied.

## IV.    ORDER

For the foregoing reasons, defendant has not shown that he administratively exhausted

his request for a reduction in sentence or compassionate release or presented an "extraordinary

and compelling reason" for a sentence reduction, as required by 18 U.S.C. § 3582(c)(1)(A), and

the Court lacks the authority to reduce defendant's term of imprisonment to a term of home

confinement.  Accordingly, it is hereby

**ORDERED** that defendant's Motion to Reduce Sentence re First Step Act of 2018 or for

Compassionate Release, ECF No. 68, is **DENIED.**

**SO ORDERED.**

Date: August 31, 2020

_____
BERYL A. HOWELL
Chief Judge